IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
) Criminal Action
) No. 09-cr-00599
vs. )
)
LILIAN MARITZA YAGGI-VELASCO, )
)
Defendant )

\* \* \*

APPEARANCE:

      ALBERT J. RAMAN, ESQUIRE
         On behalf of Defendant, Ex Parte

\* \* \*

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

This matter is before the court on three ex parte motions[1] of court-appointed defense counsel seeking payment in full of five vouchers submitted to the court seeking legal fees and costs for representing his client in this criminal case. I approved payment of the first voucher in full, and payment in part of the second and third vouchers. I denied payment of the fourth and fifth vouchers, which once again sought payment of

---

[1] The three motions filed by defense counsel were as follows: (1) Albert J. Raman's Ex Parte Motion for Payment in Full, which undated motion was filed May 14, 2010; (2) Albert J. Raman's Second Ex Parte Motion for Payment in Full, which undated motion was presented September 21, 2010 together with a Petition for Certification and filed June 7, 2011; and (3) Albert J. Raman's Third Ex Parte Motion for Payment in Full, which motion was dated April 28, 2011, presented May 9, 2011, and filed June 7, 2011.

those portions of the second and third vouchers, respectively, which were denied.  For the reasons articulated below, I deny each motion.

PROCEDURAL HISTORY

On September 9, 2009, defendant Lilian Maritza Yaggi-Velasco was charged in a one-count Indictment with illegal reentry after deportation in violation of 8 U.S.C. 1326(a). Specifically, the Indictment alleged that defendant is an alien and native and citizen of Guatemala who, having previously been deported, was found in the United States on August 4, 2009 without securing from the Attorney General of the United States or his successor, the Secretary of the Department of Homeland Security, the required permission to apply for readmission to this country.

On September 16, 2009, United States Magistrate Judge Henry S. Perkin appointed Albert J. Raman, Esquire to serve as counsel for defendant.  On September 18, 2009 Attorney Raman filed an Entry of Appearance on behalf of defendant.

On January 25, 2010 defendant and her counsel appeared before me, and defendant pled guilty to the Indictment.

On May 17, 2010 I sentenced defendant to a term of six months incarceration, followed by twelve months of supervised release, and directed her to pay a special assessment of $100.00.

In connection with this case, Attorney Raman submitted a series of five vouchers requesting payments for his legal services, costs and expenses in the total amount of $27,936.22. In a series of Orders disposing of each voucher[2], I authorized payments in the total amount of $14,673.97 for part of the legal fees, and all of the expenses, sought by defense counsel.

Subsequent to my Orders, Attorney Raman filed the three motions enumerated above, seeking payment of that portion of his fee requests which had been denied. As suggested by the Guide to Judiciary Policy[3], I provided defense counsel an opportunity to address with me the matter of the reduction of his claim for legal fees, which defense counsel took advantage of by meeting with me in my Philadelphia chambers and discussing it on June 21, 2011.

At that meeting I briefly advised Attorney Raman of the reasons why I reduced his claim for counsel fees, consistent with the discussion in this Opinion, including the statutory $9,700.00 per case maximum compensation for a non-felony case such as this.

---

[2] The pre-printed vouchers were completed and submitted by defense counsel on a form entitled CJA [Criminal Justice Act] 20 Appointment of and Authority to Pay Court Appointed Counsel. The Order portion of each voucher is pre-printed at the bottom of the voucher in a series of boxes numbered 23 through 28a. I entered the Orders approving the first voucher and approving in part the second and third vouchers, and denying the fourth and fifth vouchers by filling in the amount and type of compensation approved, my signature as the Presiding Judicial Officer, the date, and my Judge Code. The total amounts approved on each voucher and dates of approval were: (1) $8,534.42, March 10, 2010; (2) $3,049.59, March 26, 2010; (3) $3,089.96, January 31, 2011; (4) $0, March 30, 2011; and (5) $0, June 7, 2011.

[3] See Guide to Judiciary Policy, Vol. 7A, Ch.2, § 230.36(a).

I gave him an opportunity to support his request for further payment beyond this cap by explaining to me why and how the case involved the need for extended or complex representation and by indicating to me in what respect the legal and factual issues in the case were unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case.

For the reasons articulated below, I conclude that the additional fees sought are not authorized by the Criminal Justice Act, 18 U.S.C. § 3600A ("CJA"), and are unreasonable. Accordingly, I deny each motion.

## DISCUSSION

At issue in this matter are the requests of court-appointed criminal defense counsel Albert J. Raman for payment of legal fees sought under the Criminal Justice Act. The history of payment in this case is as follows.

On March 10, 2010 I approved in full defense counsel's first interim payment voucher, known as a "CJA 20" form. That first voucher requested payment of $396.00 for in-court compensation and $7,997.00 for out-of-court compensation, all at a rate of $110.00 per hour; plus $39.72 in travel expenses, and $101.70 in other expenses, for a total of $8,534.42.

These fees and costs arose from Attorney Raman's representation of defendant Lilian Maritza Yaggi-Velasco at her

-4-

arraignment before United States Magistrate Judge Henry S. Perkin and at an ex parte pretrial motions hearing before me on December 15, 2009. At that three-hour hearing, I granted in part and denied in part defendant's two ex parte motions for funds under the CJA to obtain the services of a legal consultant (an immigration law expert) and an interpreter to assist counsel and his client in consulting with the expert. Specifically, I authorized $440.00 for retention of the expert, and $325.00 for the services of a Spanish-English interpreter.[4]

In connection with that hearing and defendant's arraignment, Attorney Raman averred on his first voucher that he had expended 3.6 hours of in-court time and 72.7 hours of out-of-

---

[4] On November 3, 2009 defense counsel filed an Ex Parte Motion for Authorization of Legal Analyst/Consultant Pursuant to the Criminal Justice Act and an Ex Parte Motion for Authorization of Interpreter/Translator Pursuant to the Criminal Justice Act. In the two motions, defense counsel sought authorization to expend $2,200.00 of government funds, exclusive of reimbursement of expenses incurred, to retain the services of Steven A. Morley, Esquire as an immigration law expert for 20 hours at the rate of $110.00 per hour; and to expend $1,950.00 of government funds exclusive of reimbursement of expenses incurred, to retain the services of Raymond McConnie as a Spanish-English interpreter for 30 hours at the rate of $65.00 per hour for purposes of consultations between defense counsel, the immigration law expert, and the defendant.

For the reasons articulated on the record at the December 15, 2009 hearing on these motions, I granted authorization to pay Attorney Morley up to $440.00 for four hours at his hourly rate, and authorization to pay Mr. McConnie up to $325.00 for five hours at his hourly rate. I denied defendant's request for additional authorization for each person without prejudice to reapply for additional authorization for further engagement of the immigration law expert and interpreter if defendant could establish that she may have a plausible defense, could demonstrate with specificity the reasons why such services are required and the necessity for such services, and could show that a reasonable attorney would engage such services for a client having the independent financial means to pay for them. See United States v. Pitts, 346 Fed.Appx. 839, 841-842 (3d Cir. 2009) and the other cases cited on the record at the December 15, 2009 hearing on the within motions.

court time, plus travel and other expenses, for a total of $8,534.42 which was paid in full.

Defendant pled guilty before me on January 25, 2010. In connection with that change of plea hearing, Attorney Raman submitted a second voucher dated March 5, 2010 seeking an additional $11,637.09. Specifically, the voucher sought $237.50 for 1.9 hours of in-court time at the plea hearing, and $11,087.50 for 88.7 hours of out-of-court time, all at a rate of $125.00 per hour; $85.75 in travel expenses; and $226.34 in other expenses.

On March 26, 2010 I approved in full the requested in-court compensation, travel expenses and other expenses. However, I reduced the out-of-court compensation from $11,087.50 to $2,500.00, which represents a reduction from the requested 88.7 hours of out-of-court time to payment for 20 hours of out-of-court time. Thus, I approved payment of the second voucher in the total amount of $3,049.59, which is $8,587.50 less than Attorney Raman requested on that voucher.

Following defendant's sentencing on May 17, 2010, defense counsel submitted a third voucher dated June 1, 2010 seeking an additional $7,764.96, and averring on the form that $8,587.50 remained due to him as unpaid on the second voucher. This third voucher sought $400.00 for 3.2 hours of in-court compensation from the sentence hearing and $7,175.00 for 57.4

hours of out-of-court compensation, at a rate of $125.00 per hour; $27.75 in travel expenses; and $162.21 in other expenses.

Again, on January 31, 2011 I approved payment in full of the in-court compensation, travel expenses, and other expenses, and again I reduced the out-of-court compensation requested to $2,500.00, representing compensation for 20 hours of out-of-court time rather than the 57.4 hours of out-of-court time defense counsel had requested.  The total amount paid on the third voucher was $3,089.96, which is $4,675.00 less than Attorney Raman requested on that voucher.

Attorney Raman submitted a fourth voucher on September 21, 2010 which he characterized as an "ongoing fee collection" and seeking the $8,587.50 which I had denied on the second voucher.  I denied the request on March 30, 2011.

On April 28, 2011, Attorney Raman submitted a fifth voucher, seeking the $4,675.00 which I had denied on the third voucher.  I denied the request on June 7, 2011.

Thus, defense counsel has been paid a total of $14,673.97 for his work on this case. His most recent (third) motion presented May 9, 2011 seeks further payment of the

$13,262.50 which was the total amount denied on the second and third vouchers, and re-denied on the fourth and fifth vouchers.[5]

If each of defendant's vouchers had been approved and paid in full, defense counsel would have been paid a total of $27,936.22 for this one-count illegal reentry case which resulted in a guilty plea. Payment in full of the $27,936.22 would have compensated defendant for 218.8 hours of out-of-court time sought (of which 112.7 hours were paid) plus 8.7 hours of in-court time sought (which was fully paid), for a total of 227.5 hours of compensation sought.

Defense counsel avers that this supplemental payment is necessary to provide fair compensation for the work that he has done on this case, and that the 106.1 hours of out-of-court time which has not been compensated was required for effective and adequate representation of Ms. Yaggi-Velasco.

The Criminal Justice Act, which provides for adequate representation of indigent defendants, establishes maximum amounts which may be paid to court-appointed counsel for compensation. 18 U.S.C. § 3600A. Presently, the case maximum for a non-capital felony case is $9,700.00 for the trial court level, based on the formula set forth in 18 U.S.C. § 3600A.

---

[5] The body and prayer for relief of defense counsel's third motion seeks $13,262.50. The April 25, 2011 Invoice attached to defense counsel's CJA 20 voucher seeks $13,262.25.

However, payment in excess of the maximum amount "may be made for extended or complex representation" if the court certifies that it is "necessary to provide fair compensation" and if the payment is approved by the Chief Judge of the circuit or his delegate. 18 U.S.C. § 3600A(d)(3). Attached to defense counsel's second motion is a Petition for Certification, seeking a certification that the excess payment of $11,637.09 sought in the second voucher is necessary to provide fair compensation.

"Extended representation" means representation that "involves more time than what is required in the usual case." United States v. Tillman, 2010 WL 2245033, at *1 (W.D.Pa. June 3, 2010)(Lancaster, C.J.)(internal citations omitted). A case is complex for purposes of the CJA where the "legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case." Id.

Here, defense counsel is requesting a total amount ($27,936.22) which is nearly triple the statutory maximum for this case ($9,700). The matter was neither complex nor extended and, based on my experience, the requested compensation is excessively high. This case did not include unusual legal or factual issues, and should not have required the expenditure of more time, skill or effort than ordinarily required. On the

contrary, defendant was charged in a simple one-count illegal reentry Indictment, pled guilty, and was sentenced.

I recognize that defendant pled guilty on what would have been the first day of trial, therefore requiring defense counsel to prepare for trial, and that this case required a relatively short pretrial motions hearing. Accordingly, I approved fees in excess of the statutory maximum. However, the issues simply are not complex or unusual. Therefore, I cannot conclude that more compensation, above and beyond the $14,673.97 which has already been approved, is warranted here.

Moreover, the nearly $15,000 which has been paid to defense counsel already exceeds the statutory maximum by more than 50 percent. Although I decline to sua sponte reconsider having authorized the first voucher in full, I note that defense counsel has already been compensated for 112.7 hours of out-of-court time.

Attorney Raman did not provide in his three motions and accompanying memorandum or in our June 21, 2011 discussion any persuasive reason supporting his fee request, nor can I fathom how this case could possibly have required the 218.8 hours of out-of-court time for which defense counsel has requested compensation. The total of 227.5 hours of compensation sought for both in-court and out-of-court time is the equivalent of nearly six weeks of full-time forty-hour-per-week legal

preparation for a simple, straightforward, routine, one-count charge of reentry after deportation where defendant was found in this country after deportation without having applied for, or having received permission to apply for, reentry.

Counsel avers, for example, that he spent extensive time preparing a "novel and nascent defense" based on a theory of jury nullification, and preparing a jury instruction regarding that theory, in an attempt to keep defendant's family intact.[6]

However, the United States Court of Appeals for the Third Circuit has stated that "jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role." United States v. Jones, 408 Fed.Appx. 589, 590 n.1 (3d Cir. Nov. 22, 2010)(quoting United States v. Boone, 458 F.3d 321, 329 (3d Cir. 2006)). Indeed, jurors who commit jury nullification may be dismissed from the jury. Jones, 408 Fed.Appx. at 590 *4 n.1 (citing United States v. Kemp, 500 F.3d 257, 303 (3d Cir. 2007)).

Thus, notwithstanding any effort by defense counsel to preserve this issue for appeal, it is apparent that a jury nullification strategy is not supported by the law of this circuit, and does not warrant a determination that this case is complex.

---

[6] See Albert J. Raman's Second Ex Parte Motion for Payment in Full, page 3; see also Albert J. Raman's Ex Parte Motion for Payment in Full, pages 5-6.

-11-

Defense counsel also suggests that his preparation for trial was delayed by the scheduling of a hearing on his ex parte request for CJA funds to secure an immigration law specialist and an interpreter, asserting that he was "trying to be efficient and economical writing to the court requesting by letter" authorization for those funds.[7]

However, the Criminal Justice Act expressly provides that funds for investigative, expert, or other services necessary for adequate representation may only be approved upon finding, "after appropriate inquiry in an ex parte proceeding", that the services are necessary and that the person is financially unable to obtain them. 18 U.S.C. § 3006A(e)(1). Thus, a hearing on defendant's request for such funds was appropriate under the CJA.

The hearing was held on December 15, 2009, approximately three weeks after the filing of the requests on November 23, 2009. Although defense counsel's In Court Hourly Worksheets attached to his vouchers do not provide specifics as to how defense counsel prepared for trial, I note that defendant's proposed jury instructions were filed nearly a month later on January 11, 2010 (Document 23). Therefore, I cannot conclude that the scheduling of the ex parte hearing created any unreasonable delay.

---

[7] See Albert J. Raman's Second Ex Parte Motion for Payment in Full, page 5.

I recognize that CJA panel attorneys are valuable and perform an important and much-needed service, and I do not mean to suggest that Attorney Raman's inclination to vigorously represent his client was misplaced. Moreover, I appreciate Attorney Raman's goal of keeping his client's family intact.

"Counsel's hours, however, are not the point of reference when assessing whether to waive the congressionally mandated maximum allowance...Instead, the focus is on the nature of the case itself and whether the facts and legal issues rendered the case extended or unusually complex." Tillman, 2010 WL 2245033, at *2 (internal citation omitted). This matter was neither complex enough nor extended enough to warrant the relatively high fee request. As noted in Tillman, attorneys who accept CJA appointments must recognize the compensation limits. Id.

I am also not unsympathetic to defense counsel's averment that his automobile sustained approximately $9,000 in damage when his cooling system failed during a trip from Philadelphia, Pennsylvania, to meet with his client in Allentown, Pennsylvania where, at the time, defendant was incarcerated at the Lehigh County Prison.[8] Counsel cites no authority, however, in support of his suggestion that the court is obligated to pay

---

[8] See Albert J. Raman's Second Ex Parte Motion for Payment in Full, page 7.

-13-

for repairs to his vehicle.  As noted above, I have approved all of the travel-related expenses which Attorney Raman requested in submitting his CJA vouchers.  However, I cannot conclude that he is entitled to additional compensation for automobile repairs.

Accordingly, defense counsel's motions for payment in full are denied.

## CONCLUSION

For all the foregoing reasons, I deny the three ex parte motions of defense counsel for payment in full of the legal fees sought in this matter.